**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LIVE NATION WORLDWIDE, INC.,

       Plaintiff,

                                Case No. 10-11395

v.

                                HONORABLE DENISE PAGE HOOD

HILLSIDE PRODUCTIONS, INC.,

       Defendant.

_____/

**MEMORANDUM OPINION AND ORDER**
**and**
**NOTICE SETTING SCHEDULING CONFERENCE**

## I.   INTRODUCTION/BACKGROUND

On April 8, 2010, Plaintiff Live Nation Worldwide, Inc. filed a complaint against Defendant Hillside Productions, Inc.  Plaintiff alleges as follows:  Count I, Breach of Contract; Count II, Conversion; Count III, Fraud; and Count IV, Unjust Enrichment.

Plaintiff operates a facility known as Freedom Hill Amphitheater ("Freedom Hill"), located in Sterling Heights, Macomb County, Michigan.  (Comp., ¶ 4)  On February 4, 2009, Plaintiff and Defendant entered into a Venue License Agreement which allowed Plaintiff to use Freedom Hill for the purpose of presenting live entertainment events.  (Comp., ¶ 5)  Plaintiff contracted with the artists to perform at Freedom Hill, bore the performance expenses, such as the costs for the performing act and agreed to pay Hillside a "base rate" and "event deficiency premium," plus 50% of net revenues generated in excess of $500,000 over the term of the Agreement.  (Comp., ¶ 6)  Plaintiff was entitled to receive, after payment of the base rate in full

to Defendant, the next $250,000 in net revenues generated from the remaining events.  (Comp., ¶ 7)

Plaintiff conducted five events during the term of the Venue License Agreement, including the following artists:   311, Offspring, Jason Mraz and WRIFest, Alice Cooper. (Comp., ¶ 8)  Defendant received ticket receipts from these events.  (Comp., ¶ 10)  Plaintiff claims that after all necessary reconciliations, Defendant acknowledged, in writing, that Defendant owes Plaintiff $321,959 under the Venue License Agreement.  (Comp., ¶¶ 10-11) Plaintiff asserts that to satisfy its obligation to Plaintiff, Defendant proposed that Plaintiff produce ten more shows which would provide Defendant the "catalyst/means" to pay its debt to Plaintiff.  (Comp., ¶ 12)  Plaintiff claims that this proposal is an attempt to coerce Plaintiff to produce additional shows at Freedom Hill.  (Comp., ¶ 14)

This matter is before the Court on Defendant's Motion to Dismiss under Rule 12(b)(6) of the Rules of Civil Procedure, or, alternatively, for Partial Summary Judgment under Rule 56(c). and Defendant County of Macomb's Motion to Intervene as to Counts,.    On May 28, 2010, Defendant filed a Motion to Dismiss for Failure to State a Claim as to Counts II and IV, and Count III for failure to plead fraud with the requisite specificity under Fed. R. Civ. P. 9(b).  On June 14, 2010 the County of Macomb ("Macomb County") filed a Motion to Intervene. Macomb County seeks intervention as of right under Fed. R. Civ. P. 24(a), or alternatively, permissive intervention under Fed. R. Civ. P. 24(b).

## II.    MOTION TO DISMISS OR FOR PARTIAL SUMMARY JUDGMENT

### A.    Standard of Review

Rule 12(b)(6) of the Rules of Civil Procedure provides for a motion to dismiss based on failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In *Bell*

*Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 555 (internal citations omitted). Although not outright overruling the "notice pleading" requirement under Rule 8(a)(2) entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard." *Id.* at 563. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion–even if that conclusion is cast in the form of a factual allegation." *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868 (2009). In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content" and the reasonable inferences from that content, must be "plausibly suggestive" of a claim entitling a plaintiff to relief. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show [n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). The court primarily considers the allegations in the complaint, although matters of

3

public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

Rule 56 provides that "[a] party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b).  Wright & Miller's *Federal Practice and Procedures*, states that "an adverse party may not rest on mere allegations or denials in the pleadings. The opposing party must present evidentiary matter showing that there is a genuine issue of material fact that is worth bringing to trial, or else summary judgment, if appropriate, may be entered against him." Wright, A. Miller, & M. Kane, *Federal Practice and Procedures* § 2721, at 40 (2d ed. 1983).  Summary judgment is appropriate if the court examines "the pleadings, depositions, answers to interrogatories, and admissions on file…which it believes demonstrate the absences of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317 (1986).  If a complaint fails to state a claim for a relief and is dismissed pursuant to Rule 12(b)(6), then a determination for summary judgment is unnecessary.

### B.    Conversion, Count II

Defendant seeks to dismiss the conversion count, Count II.  Plaintiff asserts it sufficiently stated a conversion claim when Defendant converted ticket receipts that belonged to Plaintiff.

"In the civil context, conversion is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins. Co. v. Allstate Ins. Co.,* 439 Mich. 378, 391 (1992).  For a plaintiff to prevail on a claim of conversion of money, "the defendant must have an obligation to return the specific money entrusted to his care." *Head v. Phillips Camper Sales & Rental, Inc.,* 234 Mich. App. 94,

111 (1999); *Hanover Exchange v. Metro Equity Group, LLC.*, 2009 WL 2143866 *2 (E.D. Mich. July 14, 2009). However, "failure to pay a debt, without more, does not amount to conversion of the unpaid funds." *Hanover*, 2009 WL 2143866 at *2. The Michigan Supreme Court has held that "conversion is maintainable for money when trover would lie under the former practice," and "[t]rover is not maintainable for money unless there [is] an obligation on the part of the defendant to return the specific money intrusted to his care." *Alfred Shrimpton & Sons v. Culver*, 109 Mich. 577, 580 (1896). A complaint must allege a separate and distinct possession of another's property to constitute a claim of conversion. *Hanover*, 2009 WL 2143866 at *2. An example of a specific money is "where an individual cashes a check and retains the full amount of the check when he is entitled to only a portion of that amount." *Id.* Failure to pay a debt, without more, does not amount to conversion of the unpaid funds. *Id.* In *Garras v. Bekiares*, 315 Mich. 141, 147 (1946), the plaintiff brought an action alleging conversion based on a dispute over a consignment agreement. The Michigan Supreme Court held that because the "plaintiff was not entitled to the specific or identical moneys collected by defendant from his customers, he was not entitled to a judgment in tort for conversion." *Id.*

The Complaint alleges that "Hillside wrongfully exercised dominion over property (money) belonging to Live Nation" and "converted the property for its own use and benefit, to the detriment of Live Nation." (Comp., ¶ 19). Plaintiff has failed to state a conversion claim. Plaintiff does not specify the "money" it claims belonged to Plaintiff and why that specific "money" belonged to Plaintiff. Count II alleging conversion must be dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(6).

**C.     Fraud, Count III**

Defendant asserts that the fraud claim in Count III must be dismissed because Plaintiff has failed to state with particularity the circumstances constituting fraud as required under Rule 9(b) of the Rules of Civil Procedure.  Plaintiff responds that it has stated a fraud claim with particularity.

To assert a claim of fraud, Michigan law requires the plaintiff show the following elements: "(1) [t]hat the charged party made a material representation; (2) that it was false; (3) that when he or she made it he or she knew it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) that he or she made it with the intention that it should be acted upon by the other party; (5) that the other party acted in reliance upon it; and (6) that the other party thereby suffered reliance." *Rooyakker & Sitz, P.L.L.C. v. Plante & Moran, P.L.L.C.*, 276 Mich. App. 146, 161-62 (2007).  Allegations of fraud must comply with Rule 9(b), which provides, "a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  A plaintiff is required, at minimum, to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendant; and the injury resulting from the fraud." *Bucciarelli v. Nationwide Mut. Ins. Co.*, 622 F. Supp. 2d 809, 815 (E.D. Mich. 2009).  Allegations of fraud "must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Id*.  If a complaint fails to show facial plausibility allowing a court to infer that a defendant maliciously, intentionally, or knowingly committed fraud, then the claim should be dismissed. *Id*.

Plaintiff's Complaint alleges fraud as a result of Defendant's "material false representations and/or omissions regarding the payment of revenues received from the events…"

6

(Comp., ¶ 22).  "Hillside, by converting these funds in a fraudulent manner, conducted itself toward Live Nation in a willful, malicious, reckless and fraudulent manner which deceived and harmed Live Nation."  (Comp., ¶ 24)  However, the Complaint fails to provide any specific facts or instances that Defendant acted knowingly with malice or intent to defraud.  Instead the Complaint bases its fraudulent claim on how payment of revenues are received and how the funds were converted in a fraudulent manner.  Plaintiff fails to allege a specific misrepresentation made by Defendant other than stating that Defendant made false representations.  The Complaint does not allege the time, place, and content of the alleged misrepresentation on which Plaintiff relied nor a fraudulent scheme.  Plaintiff's fraud count does nothing more than state a legal conclusion alleging "the defendant-unlawfully-harmed me." *Iqbal,* 129 S.Ct. at 1949.  The Complaint alleging fraud fails because it does not comport with Rule 9(b), *Twombley* and *Iqbal*.  Plaintiff's Count III alleging fraud is insufficient and must be dismissed.

### D.     Unjust Enrichment, Count IV

Defendant asserts that because Plaintiff has pled the existence of an express contract between the parties, Plaintiff cannot maintain an unjust enrichment claim.  In response, Plaintiff argues that the unjust enrichment claim is an appropriate alternative request for relief to its allegation of breach of contract.

Michigan law will sustain a claim of unjust enrichment when the plaintiff is able to establish the requisite elements:  "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by the defendant."  *Sweet Air Inv., Inc. v. Kenney,* 275 Mich. App. 492, 504 (2007).  "There is no claim for unjust enrichment when there exists a valid contract covering the same subject matter."  *Iverson*

*Industries, Inc. v. Metal Management Ohio, Inc.*, 525 F. Supp. 2d 911 (E.D. Mich. 2007).  In *Morris Pumps v. Centerline Piping, Inc.,* 273 Mich. App. 187, 199-200 (2006), the Michigan Supreme Court stated that "we perceive no reason why a plaintiff should not be allowed to simultaneously and alternatively assert a contract claim against one defendant with whom an express contract exists and a quantum meruit [unjust enrichment] claim against a *different* defendant with whom no express contract exists." *Id.* (italics added).

In this matter, Plaintiff alleges that Defendant failed to pay revenues negotiated in an express contract, the Venue License Agreement, and that Defendant "attempted to coerce Live Nation to produce additional shows."  (Comp. ¶14)  Because an express contract exists governing this matter, the unjust enrichment claim must be dismissed.  Plaintiff's argument that it can alternatively plead an unjust enrichment claim is without merit because the express written contract was entered into with Defendant, which is the same Defendant in Plaintiff's unjust enrichment claim.  As the Michigan Supreme Court noted above, a plaintiff may only state an alternative unjust enrichment claim if such a claim is against a *different* defendant from the defendant in the breach of contract claim.  The unjust enrichment claim must be dismissed.

### E.    Plaintiff's Motion for Partial Summary Judgment under Rule 56

In its *Response* to Defendant's Motion to Dismiss or for Partial Summary Judgment, Plaintiff asserts it is entitled to summary judgment on its breach of contract claim because Defendant acknowledged its liability in documents that it signed, created and delivered.  Defendant did not file a Reply to Plaintiff's Response, therefore, there is no response to Plaintiff's "counter-motion" for partial summary judgment on Plaintiff's breach of contract claim.  However, in its Response to Plaintiff's Motion to Amend Complaint, Defendant objects

8

to Plaintiff's assertion that Plaintiff properly filed a motion for partial summary judgment claim since the rules do not allow such a motion to be combined with a response to a motion.

Rule 5(e) of the Electronic Filings Policies and Procedures, Appendix ECF, incorporated by E.D. Mich. LR 5.1.1(a), provides that "a response or a reply to a motion must not be combined with a counter-motion" and that such a document will be stricken. (Appx. ECF, R5(e)). The Court denies without prejudice Plaintiff's Counter-Motion for Partial Summary Judgment because it violates the filing requirements set forth in R5(e) of the Court's Electronic Filings Policies and Procedures.

## III.   MOTION TO INTERVENE

Macomb County seeks an order that this Court grant Macomb County intervention as of right. Macomb County requests intervention because it owns title to the Freedom Hill, which is implicated in this legal dispute. Macomb County's proposed Complaint alleges that Defendant entered into a contract to sublease Freedom Hill on May 19, 1999. The sublease was amended with an effective date of February 9, 2000. The amended sublease permitted assignment by Defendant to a third party conditioned upon Macomb County's written consent. Macomb County alleges that Defendant did not request its consent and that it only first received notice that the Defendant may have assigned Defendant's rights to Freedom Hill to Plaintiff upon the filing of the original Complaint.

In this matter, Macomb County alleges that Defendant has not complied with the sublease in the following respects: 1) Defendant has failed to pay for parking, one percent (1%) of ticket sales and advertising revenues since 2006; 2) Defendant has failed to carry insurance coverage as required by the Lease Documents; and 3) Defendant failed to notify Macomb County of Defendant's public announcement that a concert season would be canceled on the

9

premises, but continued to hold events and use the facility, generating substantial costs in utility bills without payments to Macomb County. (Proposed Comp. by Intervening Party, ¶¶ 14, 19-21).  Macomb County requests legal and equitable remedies including:  damages, declaratory relief, injunctive relief, and any other relief deemed appropriate by this Court.

Defendant responds that Macomb County failed to establish the existence of any "significant legal interest."  Even assuming Macomb County had a protectable interest, Defendant asserts that Plaintiff can adequately protect that interest.

This Court must examine whether Macomb County qualifies for Intervention as of Right under Fed. R. Civ. P. 24(a), or alternatively, Permissive Intervention under Fed. R. Civ. P. 24(b).

Rule 24(a) provides:

> On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).

"Rule 24 should be 'broadly construed in favor of potential intervenors.'"  *Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir. 1991); *City of St. Louis v. Velsicol Chem. Corp.*, 2010 WL 1247757 (E.D. Mich. Mar. 25, 2010).  Four factors must be satisfied to grant intervention as of right:  "(1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect [her] interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest."  *Grutter v. Bollinger*, 188 F.3d 395 (6th Cir. 1999).

In evaluating whether a motion is timely, this Court looks to the factors provided by the Sixth Circuit in *Stupak-Thrall v. Glickman*, 226 F.3d, 467, 472 (6th Cir. 2000). Most relevant of these factors is "the point to which the suit has progressed." *Id.* Plaintiff filed the Complaint on April 8, 2010 while Macomb County filed this motion on June 14, 2010. At the time Macomb County filed its motion, the case was in the initial pleading stage and no Scheduling Conference had been held. Macomb County's motion is timely.

As to the second factor requiring a "substantial interest," because Macomb County has shown that it has title to Freedom Hill and a lease establishing that the Defendant contracted with Macomb County to use the property, the burden of showing a substantial legal interest factor is satisfied.

The third factor requires Macomb County to demonstrate that its ability to protect its interest may be impaired in the absence of intervention. Macomb County's claim that the 'legal and economic impacts' of the litigation would adversely affect its interest is sufficient to demonstrate that its absence may impair Macomb County's ability to protect its property interest.

The fourth factor–that the parties already before the court cannot adequately protect intervenor's interest–is satisfied. Macomb County asserts that Plaintiff cannot protect its rights because Plaintiff is also attempting to obtain damages from Defendant under a breach of contract theory. Plaintiff's allegations are in competition with Macomb County's allegations for a breach of the lease by Defendant, especially since Plaintiff is a party to an agreement with Defendant that forms the basis of the breach of the lease claim by Macomb County against Defendant.

11

Macomb County meets the criteria prescribed in the four factor test necessary to grant a motion for intervention as of right under Fed. R. Civ. P. 24(a).  Macomb County's Motion to Intervene is granted.

## IV.    MOTION TO AMEND COMPLAINT

### A.    Rule 15(a) Standard

Plaintiff seeks to amend its Complaint to add individual defendants and to remove various concerns raised by Defendant in its motion to dismiss as to the conversion and fraud counts.  Plaintiff did not seek to amend the unjust enrichment count.  Defendant opposes the amendment arguing that the proposed amended complaint fails to state a claim.

Rule 15(a) provides that a party may amend its pleading once as a matter of course within 21 days after a responsive pleading is served.  Fed. R. Civ. P. 15(a)(1).  Rule 15(a)(2) further provides that a party may amend its pleading on leave of court.  Leave shall be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  However, if a complaint cannot withstand a motion to dismiss under Rule 12(b)(6), the motion to amend should be denied as futile.  *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000).

### B.    Conversion, Count II

Plaintiff's proposed amended conversion claim alleges, "Hillside wrongfully exercised dominion over property (money) belonging to Live Nation by retaining specific ticket receipts and other funds, derived from five specific performances, that came into Hillside's possession through third parties but that at all times belonged to Live Nation."  (Proposed Am. Comp., ¶ 35) Plaintiff claims that "[i]n connection with the presentation of the events, Hillside received ticket sale receipts belonging to Live Nation and was thereafter obligated to settle accounts with Live Nation pursuant to the *Agreement* and remit finds belonging to Live Nation."  (Proposed Am.

Comp., ¶ 13) Plaintiff asserts it "never authorized or agreed that Hillside would become a contractual debtor to Live Nation or that Hillside could retain for its own purposes ticket sales and related funds that it received from third parties, including Ticketmaster and event patrons, but that were funds that belonged to Live Nation, and specifically the sums that exceeded the amounts Live Nation would eventually be required to pay Hillside and remitted to Live Nation following each performance during a settlement of accounts." (Proposed Am. Comp., ¶ 17)

The proposed Amended Complaint fails to state a conversion claim as well. The Venue License Agreement at issue sets forth the parties' obligations regarding payment. It is Plaintiff's obligation to pay Defendant for license fees based on certain calculations. (VLA, ¶¶ 4, 5) Plaintiff is entitled to $250,000 in Net Revenue generated from the remaining Events, after payment by Plaintiff to Defendant the Base Rate. (VLA, ¶ 5.b.) The parties thereafter share equally all the Net Revenue generated from the remaining Events, if any, after Plaintiff has been paid $250,000. (VLA, ¶ 5.b.) The Venue License Agreement provides for "Revenue" which includes "all Event related revenue inclusive of ticket sales, ticket commissions and rebates." (VLA, ¶ 1) Nothing in the Venue License Agreement provides that Plaintiff is entitled to specific moneys from Ticketmaster or other third-parties from ticket sales. Plaintiff is only entitled to a payment after Defendant is paid its Base Rate and only based on a calculation of Net Revenue. Plaintiff has failed to show that Defendant has an obligation to return specific money Defendant may have received from ticket sales. Plaintiff has failed to state a plausible claim of conversion in its proposed Amended Complaint and its Motion to Amend Complaint must be denied as futile.

**C.      Fraud Claim, Count III**

13

The proposed amendment of the fraud claim also fails to state a claim. The proposed fraud claim alleges, "Hillside made material false representations and/or omissions regarding the payment of revenues received from the events presented at Freedom Hill by Live Nation." (Proposed Am. Comp., ¶ 44) Plaintiff alleges that Defendant "would submit revenues from said events to Live Nation as required by the Agreement and in accordance with Live Nation's ownership of those revenues." (Proposed Am. Comp., ¶ 45) "Hillside's representations that it would and did hold event revenue sufficient to settle following the third, fourth, or fifth performance events were untrue at the time that Hillside made the representations, and these representations were made in the context of past dealings and Hillside omitted to explain to Live Nation that it would treat settlement and the ticket receipts and related revenue differently than in past years." (Proposed Am. Comp., ¶ 46)

The proposed amended fraud claim only alleges general allegations of representations by Defendant and refers to past dealings by the parties. Plaintiff alleges communications between the parties regarding the ticket receipts and other revenues but there are no facts alleging the specific time and place of these communications. It appears that based on past dealings between the parties, Plaintiff claims that Defendant's failure to provide Plaintiff with the ticket revenues constitutes fraud. Nothing in the Venue License Agreement provides how the revenue should be turned over to Plaintiff or whether the parties' past dealings are incorporated into the Agreement. "Revenue" is defined as "all Event related to revenue inclusive of ticket sales, ticket commissions and rebates. Licensor's portion of parking sales, merchandise sales and concession sales. (In the calculation of Revenue, food and beverage income of the Hillside Club shall not be included in the equation)." (VLA, ¶ 1) "An action for fraudulent misrepresentation must be predicated upon a statement of past or existing fact. A mere broken promise does not constitute

14

fraud, nor is it evidence of fraud.... [F]uture promises [are] contractual and cannot be the basis of an action for fraud." *Marrero v. McDonnell Douglas Capital Corp.*, 200 Mich. App. 438, 444 (1993).   It is noted that the Venue License Agreement provides that "[n]o prior or contemporaneous oral or written promises or representations will be binding on the parties hereto."  (VLA, ¶ 13.C.)  Plaintiff's proposed amended fraud count fails to state a plausible claim under Rule 12(b)(6) or Rule 9(b) and its Motion to Amend Complaint must be denied as futile.

### D.      Individual Defendants

The individual defendants Plaintiff seeks to add include:  Gary Ronelli and Joe Vicari, principals of Defendant, and Joseph A. Bellanca, attorney and general manager of Defendant. (Proposed Am. Comp., ¶¶ 3, 7-8) Plaintiff alleges that these proposed defendants participated in withholding funds from ticket receipts and other funds belonging to Plaintiff.  (Proposed Am. Comp., ¶¶ 29-30) Plaintiff also mentions that Michael Cairns, a representative of Defendant, made statements regarding settlement of accounts.  (Proposed Am. Comp., ¶¶ 19-21)

The remaining claim in the Complaint is the breach of contract claim in Count I.  The proposed individual defendants' names do not appear in the breach of contract claim in Count I, only in the proposed amended conversion claim in Count II.  (Proposed Am. Comp., ¶¶ 40-41) Because the Court has found that the proposed conversion claim fails to state a claim, the proposed addition of the individual defendants must also be denied as futile.

### V.      MOTION OBJECTING TO JOINT RULE 26(f) DISCOVERY PLAN

On December 23, 2010, a Motion to Adopt a Rule 26(f) Discovery Plan was filed by Plaintiff claiming that Defendant refused to participate in a Rule 26(f) conference.  Macomb County filed a response indicating it did not oppose a discovery plan if the Court were to allow

Macomb County to intervene so it can participate in discovery.  On January 17, 2011, the Court entered an Order approving the Rule 26(f) Joint Discovery Plan submitted by Plaintiff and Defendant.

Macomb County filed the instant motion objecting to the Court's entry of the Joint Discovery Plan because Macomb County was not a party to the Plan and is unable to participate in discovery.  Defendant filed a response to Macomb County's motion asserting that because Macomb County is not a party to the case, Plaintiff and Defendant were not required to discuss discovery plans with Macomb County.

It is noted that there is no authority for a Motion Objecting to a Joint Rule 26(f) Discovery Plan approved by the Court.  The Court has yet to enter a Scheduling Order in this matter.  The Court merely entered an Order approving the Discovery Plan submitted by Plaintiff and Defendant.  At the time the Discovery Plan was submitted by Plaintiff and Defendant, Macomb County was not a party to the suit.  Macomb County had no standing to object to any discovery plan approved by the Court at the time the parties submitted the Discovery Plan. Macomb County's Motion Objecting to a Joint Rule 26(f) Discovery Plan approved by the Court is denied.  However, because the Court granted Macomb County's Motion to Intervene, the Court directs the parties to submit a revised Joint Rule 26(f) Discovery Plan prior to the Scheduling Conference scheduled by the Court.

## VI.     CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6), or alternatively, for Partial Summary Judgment under Fed. R. Civ. P. 56

16

**[No. 5, filed 5/28/2010]** is GRANTED.  Counts II (Conversion), III (Fraud) and IV (Unjust Enrichment) are DISMISSED.  The breach of contract claim, Count I, remains.

IT IS FURTHER ORDERED that Macomb County's Motion to Intervene **[No. 7, filed 6/13/2010]** is GRANTED.  Macomb County must file its Complaint within 14 days from the entry of this Order.

IT IS FURTHER ORDERED that Plaintiff's Motion to Amend the Complaint **[No. 13, filed 10/6/2010]** is DENIED.

IT IS FURTHER ORDERED that Macomb County's Motion Objecting to Joint Rule 26(f) Discovery Plan **[No. 19, filed 1/27/2011]** is DENIED.

IT IS FURTHER ORDERED that a Scheduling Conference is set for **Monday, May 9, 2011, 2:30 p.m.**  The parties must file a Joint Rule 26(f) Report by May 4, 2011.


s/Denise Page Hood
Denise Page Hood
UNITED STATES DISTRICT JUDGE

Dated:  March 30, 2011


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 30, 2011, by electronic and/or ordinary mail.


s/LaShawn R. Saulsberry
Case Manager, (313) 234-5165