UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIVE NATION WORLDWIDE, INC.,

    Plaintiff,

v.

HILLSIDE PRODUCTIONS, INC.,

    Defendant.

_____/

Case No. 10-11395

HONORABLE DENISE PAGE HOOD

**OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION/BACKGROUND**

On April 8, 2010, Plaintiff Live Nation Worldwide, Inc. filed a complaint against Defendant Hillside Productions, Inc. Plaintiff alleges as follows: Count I, Breach of Contract; Count II, Conversion; Count III, Fraud; and Count IV, Unjust Enrichment. The Court dismissed Counts II, III and IV in an Order dated March 30, 2001. The Court denied Plaintiff's Motion for Reconsideration of the Court's March 30, 2011 Order on May 9, 2011. The only remaining count is Count I, the Breach of Contract claim. On April 4, 2011, Plaintiff filed a Motion for Summary Judgment as to the remaining Breach of Contract claim. A response, reply and supplemental briefs were filed. Oral arguments were held on the matter.

The Court allowed the County of Macomb to intervene in this action. Macomb County filed its Intervenor Complaint on April 4, 2011 alleging four counts: Declaratory Relief (Count I); Injunctive Relief (Count II); Breach of Contract (Count III); and Unjust Enrichment (Count IV).

Plaintiff operates a facility known as Freedom Hill Amphitheater ("Freedom Hill"), located in Sterling Heights, Macomb County, Michigan. (Comp., ¶ 4) On February 4, 2009, Plaintiff and Defendant entered into a Venue License Agreement which allowed Plaintiff to use Freedom Hill for the purpose of presenting live entertainment events. (Comp., ¶ 5) Plaintiff contracted with the artists to perform at Freedom Hill, bore the performance expenses, such as the costs for the performing act and agreed to pay Hillside a "base rate" and "event deficiency premium," plus 50% of net revenues generated in excess of $500,000 over the term of the Agreement. (Comp., ¶ 6) Plaintiff was entitled to receive, after payment of the base rate in full to Defendant, the next $250,000 in net revenues generated from the remaining events. (Comp., ¶ 7)

Plaintiff conducted five events during the term of the Venue License Agreement ("VLA"), including the following artists: 311, Offspring, Jason Mraz and WRIFest, Alice Cooper. (Comp., ¶ 8) Defendant received ticket receipts from these events. (Comp., ¶ 10) Plaintiff claims that after all necessary reconciliations, Defendant acknowledged, in writing, that Defendant owes Plaintiff $321,959 under the Venue License Agreement. (Comp., ¶¶ 10-11) Plaintiff asserts that to satisfy its obligation to Plaintiff, Defendant proposed that Plaintiff produce ten more shows which would provide Defendant the "catalyst/means" to pay its debt to Plaintiff. (Comp., ¶ 12) Plaintiff claims that this proposal is an attempt to coerce Plaintiff to produce additional shows at Freedom Hill. (Comp., ¶ 14)

## II.     PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### A.     Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B.     Breach of Contract, Count I

Plaintiff argues that Defendant failed to turn over the ticket revenue belonging to Plaintiff. After the third show, Plaintiff claims it requested a settlement of outstanding ticket revenues. Plaintiff claims that Defendant confirmed it would remit the outstanding ticket revenue but asked that the settlement be delayed until after the next performance or at the close of the season. Plaintiff asserts that Defendant failed to remit the ticket revenues to Plaintiff after the fourth and fifth performances. After demanding the money, Plaintiff states that Defendant acknowledged the money had been spent but subsequently managed to make partial payments.

Plaintiff claims that Defendant admitted it owed Plaintiff $321,959.22 for the 2009 performance season.

Defendant responds that it never admitted it owed Plaintiff $321,959.22 for the 2009 performance season. Defendant claims it had good faith objections to the charges asserted by Plaintiff. Defendant claims that "in the spirit of resolution" it proposed that Defendant and Plaintiff settle the dispute between them on certain specified terms. This resolution was put into writing at Plaintiff's request according to Defendant set forth in Exhibit D-1 to Plaintiff's motion. Defendant claims it understood that the writing was a settlement proposal, was not signed by Defendant's principals, or anyone else, and is inadmissible under Rule 408 of the Rules of Evidence. Defendant does not dispute that it had made partial payments to Plaintiff, but the fact that these payments were made does not establish a breach of a contract or damages which Plaintiff seeks in this action. Defendant claims that because Plaintiff dominates the booking of talent, it had to make an offer of compromise or settlement of the disputes in order to go forward with Defendant's plans for future seasons.

In its reply, Plaintiff asserts that Defendant only addressed in its response the "Payment Plan" to which the parties agreed. Defendant purports that the "Payment Plan" is an offer of compromise. Plaintiff claims Defendant failed to address the numerous other documents confirming Defendant's acknowledgment of the unpaid debt.

The "Payment Plan," referred to by Defendant as an offer of compromise, does not raise a dispute about the amount of debt owed by Defendant to Plaintiff, therefore Rule 408 is not applicable. Plaintiff claims there is no genuine issue of material fact that Defendant is indebted to Plaintiff.

4

A plaintiff must establish the following to state a breach of contract claim: 1) that the parties entered into a valid enforceable contract that included the terms and conditions claimed by plaintiff; 2) that the defendant breached the contract; and, 3) that the defendant's breach caused a loss to the plaintiff. *Platsis v. E.F. Hutton & Co.*, 642 F.Supp. 1277 (W.D. Mich. 1986); *Pittsburgh Tube Co. v. Tri-Bend, Inc.*, 185 Mich. App. 581 (1990).

In Michigan, the paramount goal when interpreting a contract is to give effect to the intent of the contracting parties. *Old Kent Bank v. Sobczak*, 243 Mich. App. 57, 63-64 (2000). The court is to read the agreement as a whole and attempt to apply the plain language of the contract itself. *Id*. If the intent is clear from the language of the contract itself, there is no place for further construction or interpretation of the agreement. *Farm Bureau Mut. Ins. Co. v. Nikkel*, 460 Mich. 558, 566 (1999). A contract provision that is clear and unambiguous must be "taken and understood in [its] plain, ordinary, and popular sense." *Mich. Mut. Ins. Co. v. Dowell*, 204 Mich. App. 81 (1994). Unambiguous contract provisions are not subject to interpretation and must be enforced as written. *Id*.

Defendant agrees that the parties entered into a VLA for the 2009 performance season with Plaintiff. (Ex. A, Plaintiff's Br.) There is no dispute that five performances occurred in accordance with the VLA. The dispute in this suit is that Defendant failed to pay Plaintiff in accordance with the VLA. The VLA provides as follows:

> 5. <u>Method of Payment.</u>
>
> The above amounts shall be paid to Licensor [Hillside] as follows:
>
> a. The Base Rate shall be paid to Licensor, in installments, due immediately after each Event. The amount of each installment shall be equal to tone under percent (100%) of the Net Revenue for

5

      such Event.  Such installments shall continue until the Base Rate has been paid in full.

  b. Licensee [Live Nation] shall, after payment in full of the Base Rate, be entitled to the next Two Hundred Fifty Thousand and 00/00 ($250,000.00) in Net Revenue generated from the remaining Events.

  c. After the Licensee has received Two Hundred Fifth Thousand and 00/100 ($250,000.00) from Net Revenues, as set forth above, Licensee and Licensor shall share equally in all Net Revenue generated from the remaining Events, if any.

  d. Licensee's right to receive payment as set forth in sub-paragraphs b, and c above, are subject to Licensor's right to set-off against same for any Event Deficiency Premium that becomes owing hereunder.

(VLA, ¶ 5)  The "Base Rate" is defined as $250,000.00.  (VLA, ¶ 1)  "Net Revenue" is defined as the Revenue generated from an Event less Expenses.  (VLA, ¶ 1)  "Expenses" means the cost for the performing act and other show related expenses.  (VLA, ¶ 1)  "Event Deficiency Premium" means a lump sum payment of $50,000.00 in the event the Licensee fails to produce a minimum of six Events at the Venue during the Term of the Agreement.  (VLA, ¶ 1)  "Revenue" means all Event related revenue inclusive of ticket sales, ticket commissions and rebates, Licensors portion of parking sales, merchandise sales and concession sales.  (VLA, ¶ 1)

  Plaintiff submitted various affidavits and exhibits to support is position that Defendant breached the contract by failing to pay Plaintiff in accordance to the VLA.  The Affidavit of Philip R. Ober, the General Manager of North Central/Music, a division of Plaintiff, asserts that according to the parties' past practices, a "settlement" between the parties involved the determination of revenue and expenses and the amount that either party is required to pay to the

other as to the performances that have taken place. (Ober Aff., ¶ 3) The parties' practices were that at each settlement or within 24 or 48 hours after, the party required to pay or remit the money under the settlement provided the funds. (Ober Aff., ¶ 3) After the August 14, 2009 performance of Jason Mraz, Ober contacted Michael Cairns, Treasurer of Roncelli, Inc., the individual who participated in the settlements on behalf of Defendant, to settle the performances that had taken place to date. (Ober Aff., ¶ 4) The accounts were not settled even after the following two performances. (Ober Aff., ¶ 9)

After contacting Cairns and Thomas Wickersham, Cairns' superior, the parties met and signed a Settlement Summary of the 2009 events showing $441,959.22 due from Defendant to Plaintiff. (Ober Aff., ¶¶ 9-10; Ex. 1 to Ober Aff.) Cairns noted on the face of the Settlement Summary that Defendant made subsequent payments totaling $120,000.00, reducing the amount Defendant owed Plaintiff. Exhibit 2 to Ober's Affidavit is an Event Settlement sheet for each five Event during the 2009 performance season. (Ober Aff., Ex. 2) Each Event Settlement Sheet is signed by representatives of each party and shows the total Net Revenue, the Total Expenses, the Show Net after expenses, the Show Revenue, the Revenue Distribution and the Venue/Promoter Reconciliation. (Ober Aff., Ex. 2)

Richard S. Franks, President of North Central/Music, a division of Plaintiff, submitted an affidavit indicating that on January 19, 2010, Gary Roncelli and Joe Vicari, two principals of Defendant, personally delivered to him a document entitled "Preliminary Hillside Productions, Inc. - Live Nation Payment Plan," which was not signed by either party. (Franks Aff., ¶ 5; Ex. 1 to Franks Aff.) Franks asserts that Roncelli and Vicari explained the terms of the proposed Payment Plan and acknowledged that Defendant is indebted to Plaintiff for the 2009

7

performance as reflected by the Payment Plan. (Franks Aff., ¶ 6) The unsigned Payment Plan states that Defendant owes Plaintiff $331,959.00. (Ex. 1 to Franks Aff.)

Based on the affidavits, the Settlement Summary, the underlying Event Summary Sheets, and copies of the checks from Defendant, Plaintiff has supported its claim that Defendant owes Plaintiff $321,959.22. Defendant's argument that the unsigned Payment Plan cannot be offered to support the debt owed under Rule 408 is without merit. Rule 408 prohibits the use of evidence "when offered to prove liability for, invalidity of, or *amount of a claim that was disputed as to validity or amount,* ..." Fed. R. Evid. 408(a). The Payment Plan itself does not dispute the amount owed by Defendant to Plaintiff but rather "acknowledges" that Defendant owes Plaintiffs $331,959.00 as of January 18, 2010 and that Defendant requested that Defendant pay Plaintiff from the proceeds from the upcoming future concert season in 2010. (Ex. 1 to Franks Aff.)

Defendant did not submit any documentation or other evidence disputing the validity of the amount Plaintiff asserts is owed by Defendant to Plaintiff. Defendant claims it submitted an affidavit in support of its response but no such affidavit was filed with the response. At oral arguments, Defendant presented identical affidavits of Gary Roncelli and Joseph Vicari, which was filed after the summary judgment motion hearing was held. The affidavits state that Defendant does not dispute it made payments to Live Nation for the 2009 season, as reflected in the checks attached to Plaintiff's motion. (Roncelli and Vicari Affs., ¶ 3) The affidavits assert that as to the remainder of the amount which Plaintiff demanded, Defendant had legitimate disputes with the amounts which Live Nation reported as its costs, such as the cost of talent, and that Plaintiff never received any documentation of these amounts from Plaintiff. (Roncelli and Vicari Affs., ¶ 4) The affidavits claim that because of the unequal bargaining position Defendant

was in with Plaintiff, Defendant decided to make an offer of compromise or settlement of the disputes between the parties. (Roncelli and Vicari Affs., ¶ 5) According to the affidavits, the parties met on at least two occasions to discuss the matter. At the January 19, 2010 meeting, the affidavits assert that the document attached as Exhibit 1 to the Franks affidavit was not an admission of liability on Defendant's part, but a settlement proposal. (Roncelli and Vicari Affs., ¶ 6) Because the parties did not resolve the matter, the settlement proposal did not contain the signatures of either Roncelli or Vicari. (Roncelli and Vicari Affs., ¶ 6) Defendant claims this proposal had not been accepted by Plaintiff. (Roncelli and Vicari Affs., ¶ 6)

Following the summary judgment motion hearing, Plaintiff submitted a supplemental brief to rebut Defendant's affidavits submitted during the hearing, specifically the statement in the affidavits asserting that there existed a legitimate dispute on the remaining amount owed by Plaintiff to Defendant. Plaintiff submitted the deposition of Michael Cairns, Defendant's Rule 30(b)(6) corporate representative. Cairns testified that once the settlement statements were signed, the party to whom funds were due would be paid within one to two weeks. (Cairns Dep. at 134) Cairns asserted he was authorized by the ownership, Roncelli and Vicari, to sign off on the total settlement summary. (Cairns Dep. at 121) Cairns indicated that the settlement statement, identified as Exhibit 11 at the deposition, was the final accounting of the funds collected and due between the parties for 2009 and there was no dispute as to the amount. (Cairns Dep. at 133-34) Cairns testified that the original balance was $441,959.22 owed by Defendant to Plaintiff and with payments made by Defendant, the total balance was $321,959.22. (Cairns Dep. at 134-35) Cairns testified that Defendant paid no portion of the outstanding $321,959.22 to Plaintiff and that he did not think there were funds in the bank account. (Cairns Dep. at 135, 138)

Although Defendant claims it had good faith objections to the charges submitted by Plaintiff, other than noting that Defendant dominated the booking of music talents, Defendant does not dispute that the Settlement Summary and each underlying Event Summary Sheet was signed by representatives of both parties. The Roncelli and Vicari affidavits do not dispute that Defendant's representative signed the Settlement Summary. The Roncelli and Vicari affidavits only mention Exhibit 1 to the Franks affidavit, which was a "Payment Plan."

Even if the Payment Plan was not considered by the Court, given Defendant's assertion that this document was a settlement offer, Defendant does not dispute that the Settlement Summary and the underlying Event Summary Sheets submitted by Plaintiff do not reflect the correct amount owed by Defendant to Plaintiff. There is nothing in the Settlement Summary or the underlying Event Summary Sheets which indicate that Defendant objected to the revenues generated by each performance or ticket sales related to each performance. Defendant cannot overcome the evidence submitted by Plaintiff showing that Defendant agreed to the amounts set forth in the Settlement Summary and the underlying Event Summary Sheets. Defendant's own Rule 30(b)(6) representative, Cairns, admitted that the Settlement Summary was a final amount and that there was no dispute as to the amount on the Settlement Summary and the underlying Event Summary Sheets. The owners' affidavits are conclusory and contrary to the deposition testimony of Defendant's representative who was authorized to sign off on the Settlement Summary. Roncelli and Vicari's affidavits do not create a genuine issue of material fact, in light of the evidence submitted by Plaintiff.

Given that Plaintiff has properly supported the amount owed by Defendant and Defendant has not submitted any material evidence to dispute the amount, the Court finds the amount is undisputed and Plaintiff is entitled to summary judgment under Rule 56.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Plaintiff's Motion for Leave to File Supplemental Brief **[No. 51]** is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment **[Doc. No. 24]** is GRANTED. The Court finds there is no issue of material fact and finds Defendant is in breach of contract as to Count I of the Complaint. Plaintiff is entitled to judgment in the amount of $321,959.22. A judgment will be entered when all issues in this action are resolved.

        s/Denise Page Hood
        Denise Page Hood
        United States District Judge

Dated: February 29, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 29, 2012, by electronic and/or ordinary mail.

        s/LaShawn R. Saulsberry
        Case Manager